J-S40030-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DAVID FIELDHOUSE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY T/A/ METLIFE AUTO & HOME | |
| Appellee | No. 3056 EDA 2015 |

Appeal from the Order September 1, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): October Term, 2012 No. 002205

BEFORE:  BOWES, J., MUNDY, J., and MUSMANNO, J.

MEMORANDUM BY MUNDY, J.:                    **FILED JUNE 21, 2016**

Appellant, David Fieldhouse, appeals from the September 1, 2015 order, granting the motion for summary judgment filed by Appellee, Metropolitan Property and Casualty Insurance Company (MetLife).  After careful review, we affirm.

A prior panel of this Court summarized the relevant factual and procedural history of this case as follows.

> Fieldhouse commenced an action against MetLife by writ of summons on October 16, 2012. MetLife issued a rule to file a complaint upon Fieldhouse on January 3, 2013.  Fieldhouse complied on January 24, 2013, averring that: (1) he was involved in a motor vehicle-pedestrian accident on June 9, 2008; (2) pending its investigation of the accident, the police department had Fieldhouse's vehicle towed; (3) Fieldhouse filed a claim with his

insurer, MetLife, for body damage to his vehicle; (4) MetLife assigned a claims investigator, who also cooperated with the police department's criminal investigation of the accident; (5) based on information received, in part, from the claims investigator, the police arrested Fieldhouse, and the district attorney filed charges on October 21, 2008; (6) the MetLife claims investigator testified at a preliminary hearing on January 5, 2009; (7) thereafter, the district attorney withdrew all of the charges; (8) throughout the criminal and insurance investigations, MetLife denied Fieldhouse property damage benefits; and (9) MetLife denied benefits in bad faith.

MetLife filed preliminary objections on February 13, 2013, seeking dismissal of Fieldhouse's complaint for failure to conform to law or rule of court. MetLife also demurred, raising the affirmative defenses of statute of limitations and immunity. In response, Fieldhouse filed preliminary objections to MetLife's preliminary objections. MetLife then filed an answer.

The trial court heard both sets of preliminary objections on April 1, 2013, and entered an order sustaining MetLife's demurrer and dismissing Fieldhouse's complaint with prejudice. The trial court did not expressly rule on Fieldhouse's preliminary objections; however, it considered them moot given its disposition of MetLife's preliminary objections.

*Fieldhouse v. Metro. Prop. & Cas. Ins. Co.*, 102 A.3d 526 (Pa. Super. 2014) (unpublished memorandum at 1-3) (internal citations omitted).[1]

Fieldhouse filed a timely notice of appeal to this Court, and on April 9, 2014, this Court vacated the trial court's order and remanded for further

---

[1] For consistency, we have altered the designation of Appellee as "Metlife" to "MetLife" throughout the quotation from our prior memorandum.

proceedings. Without expressing an opinion on the merits, we held that the trial court erred when it sustained MetLife's preliminary objections on a statute of limitations theory, when such defenses must be raised as new matter. *Id.* at 5-12.

On remand, MetLife filed an answer to the complaint on May 20, 2014, including as new matter, relevant to this appeal, that Fieldhouse's claims were barred by the statute of limitations. On May 18, 2015, MetLife filed a motion for summary judgment, to which Fieldhouse filed a response on June 17, 2015. On June 19, 2015, MetLife filed its own reply to Fieldhouse's answer. The trial court dismissed MetLife's summary judgment motion without prejudice on July 1, 2015, concluding that it was premature as pleadings had not yet closed. On July 14, 2015, Fieldhouse filed his reply to MetLife's new matter, and that same day, MetLife filed a second motion for summary judgment. Fieldhouse filed his answer to MetLife's second summary judgment motion on August 14, 2015. On September 1, 2015, the trial court entered an order granting MetLife's motion for summary judgment. On September 18, 2015, Fieldhouse filed a timely notice of appeal.[2]

On appeal, Fieldhouse raises the following issue for our review.

---

[2] Fieldhouse and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

Did the trial court commit on [sic] error of law by summarily rendering judgment in favor of [MetLife] and against [Fieldhouse] based on the underlying claim of bad faith being time-barred despite [MetLife] involving itself in the prosecution of criminal charges against [Fieldhouse], the pursuit of which, [Fieldhouse] asserts, had *tolled* the running of the applicable statute?

Fieldhouse's Brief at 4 (emphasis in original).

We begin by noting our well-settled standard of review pertaining to summary judgment motions.

"[O]ur standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law[,] and our scope of review is plenary." **Petrina v. Allied Glove Corp.**, 46 A.3d 795, 797–798 (Pa. Super. 2012) (citations omitted). "We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." **Barnes v. Keller**, 62 A.3d 382, 385 (Pa. Super. 2012), *citing* **Erie Ins. Exch. v. Larrimore**, 987 A.2d 732, 736 (Pa. Super. 2009) (citation omitted). "Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered." **Id.** The rule governing summary judgment has been codified at Pennsylvania Rule of Civil Procedure 1035.2, which states as follows.

**Rule 1035.2. Motion**

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1) whenever there is no genuine issue of any material fact as to a necessary

- 4 -

element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2.

"Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment." *Babb v. Ctr. Cmty. Hosp.*, 47 A.3d 1214, 1223 (Pa. Super. 2012) (citations omitted), *appeal denied,* 65 A.3d 412 (Pa. 2013). Further, "failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law." *Id.*

Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a prima facie cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

*Id., citing Reeser v. NGK N. Am., Inc.,* 14 A.3d 896, 898 (Pa. Super. 2011), *quoting Jones v. Levin*, 940 A.2d 451, 452–454 (Pa. Super. 2007) (internal citations omitted).

- 5 -

*Cadena v. Latch*, 78 A.3d 636, 638-639 (Pa. Super. 2013).

Although the trial court's order was silent as to the grounds upon which it granted summary judgment, the trial court explained in its Rule 1925(a) opinion that it granted summary judgment on the basis that Fieldhouse's complaint was barred by the statute of limitations. Trial Court Opinion, 12/1/15, at 8. We note that our Supreme Court has explained that "the statute of limitations begins to run as soon as a right to institute and maintain suit arises." *Crouse v. Cyclops Indus.*, 745 A.2d 606, 611 (Pa. 2000) (citation omitted). "Whether a complaint is timely filed within the limitations period is a matter of law for the [trial] court to determine." *Id.*

In this case, the parties agree that Fieldhouse's bad faith claim is governed by a two-year statute of limitations. Fieldhouse's Brief at 9; MetLife's Brief at 6; *see also generally* 42 Pa.C.S.A. § 5524(7); *Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 885 (Pa. 2007). However, the parties dispute when the statute of limitations began to run. It is undisputed that Fieldhouse began this action on October 16, 2012, when he filed his writ of summons. In his complaint, Fieldhouse alleged that Andrew Keiser, an agent for MetLife, testified at the January 5, 2009 preliminary hearing in his criminal case which "resulted in [Fieldhouse] having to prepare a defense in anticipation of a trial." Fieldhouse's Complaint, 1/24/13, at ¶ 17. Fieldhouse alleged that MetLife acted in bad faith when Keiser "obtained information from [him] under the guise of acting as an agent on behalf of

[MetLife] which information was thereafter shared with, and used by, the police authorities[.]" *Id.* at ¶ 23(b). Therefore, the trial court reasoned that, based on the complaint's allegations, the latest date the statute of limitations could have begun to run was January 5, 2009. Trial Court Opinion, 12/1/15, at 7. Therefore, as the statute of limitations would have expired on January 5, 2011, the trial court concluded Fieldhouse's October 16, 2012 writ of summons was untimely filed. *Id.* at 8.

On appeal, MetLife argues that the trial court correctly concluded that the statute of limitations began to run on January 5, 2009. MetLife's Brief at 12; Trial Court Opinion, 12/1/15, at 7. However, Fieldhouse argues that the statute of limitations was tolled until October 18, 2010, when the Commonwealth *nolle prossed* the criminal charges against him, or on January 5, 2014, when the statute of limitations expired for the criminal charges. Fieldhouse's Brief at 9-10. Fieldhouse relies exclusively on this Court's decision in *Diamon v. Penn Mut. Fire Ins. Co.*, 372 A.2d 1218 (Pa. Super. 1977). Fieldhouse's Brief at 9-10. Conversely, MetLife argues that this Court's decision in *Jones v. Harleysville Mut. Ins. Co.*, 900 A.2d 855 (Pa. Super. 2006), *appeal denied*, 918 A.2d 746 (Pa. 2007), is controlling.

In *Jones*, this Court described *Diamon* and its holding as follows.

> In *Diamon,* the appellants purchased a fire insurance policy covering their home and some personal property from the appellee, Penn Mutual (Penn Mutual). A fire later ensued, destroying the appellants' home and furniture. Penn Mutual rejected the appellants' proof of loss and refused to

pay their claim. The same day, the district attorney filed a criminal complaint against the appellant-husband, charging him with filing a false proof of loss for claiming damage to furniture which had previously been removed from the home. The appellant-husband was found guilty of the criminal charge, but his conviction was later reversed and the matter *nolle prossed* after he secured a bulldozer and uncovered the furniture he claimed was missing from the rubble of his home. The appellants then filed a complaint against Penn Mutual which was untimely under the provisions of the applicable policy. Nevertheless, this Court ruled that the appellants' action was not barred by the applicable limitation clause. **It was noted that the detective involved in the matter signed the criminal information "at the instigation" of Penn Mutual's insurance adjuster**. *Id.* at 1222. The limitation clause was found to be suspended when Penn Mutual "made its mistaken charge against" the appellant-husband. *Id.* at 1223. The panel remarked that the record established that the district attorney filed the criminal charges against the appellant-husband "as a result of being told by [Penn Mutual's] adjuster that [the appellant-husband] had attempted to cheat the company."

*Id.* at 857 (emphasis added).

In **Jones**, the plaintiff owned property that suffered a fire on August 1, 1999, after which Jones notified the insurer of the loss. Subsequent to an investigation, the insurance company informed Jones that her claim was denied "based upon the defenses of arson, misrepresentation, fraud, certain business owner policy conditions [the plaintiff's lessee] failed to meet and its failure to cooperate in the investigation of the claim." **Id.** at 856. Soon thereafter, the Pennsylvania State Police sent an Arson Immunity Reporting Act request, to which the insurance company responded. **Id.**; **see also**

*generally* 40 P.S. § 1610.3(a).  As a result of the insurer's cooperation, criminal charges were instituted against Jones for arson among other charges.  *Jones*, *supra* at 856.  Jones received a judgment of acquittal at the close of the Commonwealth's case.  *Id.*

After the criminal trial, Jones resubmitted her claim, which was denied, and she initiated a complaint for breach of contract and bad faith.  The trial court held that Jones' breach of contract claim was barred by the two-year limitations clause in the policy.  Jones made a similar argument to Fieldhouse's argument in this case, that under *Diamon*, "because Harleysville took some role in the filing of the criminal charges, the limitation clause in the contract should be suspended."  *Id.* at 857.  This Court affirmed, rejecting Jones' reliance on *Diamon* for the following reason.

> While [Jones] liken[s] the *Diamon* case to the present factual situation, we agree with the trial court and find it factually distinguishable.  In the present case [**Jones**] **can point to no evidence of record that Harleysville had a role in the filing of the criminal charges, unlike the situation in *Diamon* where the insurer was found to have instigated the criminal action**.  The role of the insurer in the institution of the criminal charges in *Diamon* was recognized as a distinguishing fact in *McElhiney v. Allstate Ins. Co.,* 33 F. Supp. 2d 405 (E.D. Pa. 1999) wherein the court stated: "Even if it is the law in Pennsylvania, the bad faith conduct alleged in *Diamon* involved an insurer which, without any apparent basis, caused criminal charges to be brought against the insured."  *Id.* at 408.  Here, the police investigation was an independent one and **there is no evidence that Harleysville acted to initiate criminal charges**.  The investigating trooper testified that he was not

- 9 -

contacted by any agent of Harleysville; rather, he initiated contacted [sic] with Harleysville and had the fire marshal from Harrisburg issue a letter and request for information to Harleysville through the Arson Reporting Immunity Act. The trooper was specifically questioned if "at any point in time, did anybody from Harleysville encourage you to bring these charges," and he responded, "no." Deposition testimony of Jacob E. Andolina Jr., 7/29/03, at 21.

*Id.* at 857-858 (emphases added). This Court then applied the same analysis to rejecting Jones' claim of bad faith under the statute of limitations at Section 5524(7).[3] *Id.* at 858-859.

Turning to this case, Fieldhouse argues that MetLife "had a direct and vital role in the filing and prosecution of the criminal charges" when it "offered to share … information with the police authorities." Fieldhouse's Brief at 10. Fieldhouse points this Court to an investigation report, in which the investigating trooper stated he spoke to Detective Geliebter, whom Keiser informed he had "information that [they] would find interesting." Fieldhouse's Response to MetLife's Second Motion for Summary Judgment, 8/14/15, Exhibit P-3, at 1. Said report also stated that "based on [the]

_____

[3] The trial court rejected Jones' bad faith claim on the basis that "the record demonstrated that Harleysville conducted a reasonable investigation and had a reasonable basis for denying the underlying claim." *Jones*, *supra* at 858. However, this Court rejected that rationale and affirmed on the alternative ground that the two-year statute of limitations had expired. *Id.* at 858-859; *see also generally In re Estate of Strahsmeier*, 54 A.3d 359, 364 n.17 (Pa. Super. 2012) (stating, "[a]s an appellate court, we may uphold a decision of the trial court if there is any proper basis for the result reached; thus we are not constrained to affirm on the grounds relied upon by the trial court[]"), *appeal denied*, 69 A.3d 603 (Pa. 2013).

information received from Keiser, [the trooper] applied for and received approval for a search warrant at [Fieldhouse's] property." *Id.* Therefore, in Fieldhouse's view, the statute of limitations was tolled under *Diamon*. Fieldhouse's Brief at 9.

The trial court rejected Fieldhouse's argument as to *Diamon* based upon the following.

> In [*Diamon*], the insured's attorney advised them that, based upon the conduct of the insurer, to resubmit the claim would result in second prosecution; consequently, the Superior Court of Pennsylvania stated that if an "insurer, having knowledge of a loss, by an act throws the insured off his guard as to the necessity of performing some duty enjoined by the policy, the insurer should not be permitted to take advantage of the failure to act." [*Diamon*, *supra* at 1219-1220.] In the instant case, the facts of *Diamon* are inapplicable as nothing in the record besides [Fieldhouse]'s conclusory arguments reflect any indication that he was induced not to sue by Appellee or that Appellee was the one who instigated the charges. *See Jones*[, *supra* at 857]. Critically, the role of the insurer in bringing the charges is the fact that triggers the tolling of the statute. Here, the criminal charges were brought at the instigation of the Abington Township Police and the Pennsylvania State Police.

Trial Court Opinion, 12/1/15, at 7-8.

After careful review of the certified record, we conclude Fieldhouse's argument does not warrant relief. In its motion for summary judgment, MetLife averred that "[a]s a result of [the] accident, the Abington Police Department conducted a criminal investigation into the circumstances of the

accident and towed and impounded [Fieldhouse]'s vehicle." MetLife's Second Motion for Summary Judgment, 7/14/15, at ¶ 6. MetLife further claimed that "[a]round that time, the Pennsylvania State Police began an investigation into [Fieldhouse] and tampered VIN plates on the involved vehicle." *Id.* at ¶ 7. MetLife also stated that "[b]oth the Abington Police Department and [the] Pennsylvania State Police **solicited information from** [MetLife]'s agents, in particular, Andrew Keiser." *Id.* at ¶ 9 (emphasis added). In his answer to MetLife's motion, Fieldhouse specifically responded to these averments as "admitted." Fieldhouse's Response to MetLife's Second Motion for Summary Judgment, 8/14/15, at ¶¶ 6, 7, 9.[4]

There is no dispute that Keiser shared information with law enforcement, which in turn aided them in their investigation. However, Fieldhouse admitted to the trial court that law enforcement solicited that information from MetLife, not the other way around. *See id.* at ¶ 9. Fieldhouse has not forwarded any evidence that Keiser, or any other agent of MetLife requested a criminal investigation or that charges be filed. Therefore, no dispute of fact existed that MetLife did not initiate the police investigation, which our cases hold "is the fact that triggers the tolling of the

---

[4] Fieldhouse denied MetLife's allegation in paragraph 7 to the extent that the Pennsylvania State Police's investigation "involved any VIN 'plates.'" Fieldhouse's Response to MetLife's Second Motion for Summary Judgment, 8/14/15, at ¶ 7. However, Fieldhouse "admitted that the Pennsylvania State Police began an investigation[.]" *Id.*

statute." Trial Court Opinion, 12/1/15, at 8; **see also Jones**, **supra** at 857-858. As a result, we conclude that **Jones** applies to this case, **Diamon** does not, and the statute of limitations was not tolled. Therefore, looking at the record in the light most favorable to Fieldhouse, the statute of limitations began to run on January 5, 2009, and expired on January 5, 2011. Thus, Fieldhouse's October 16, 2012 writ of summons was untimely filed under the two-year statute of limitations, and he is not entitled to relief on appeal. **See Crouse**, **supra**.

Based on the foregoing, we conclude the trial court properly granted MetLife's motion for summary judgment. **See Cadena**, **supra**. Accordingly, the trial court's September 1, 2015 order is affirmed.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/21/2016